IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>　　v.<br><br>CITY OF LANSING, MICHIGAN,<br><br>　　　　　　　　Defendant. | Civil Action No. _____<br><br>JURY DEMAND |

## COMPLAINT

Plaintiff, the United States of America ("United States"), by the undersigned attorneys, alleges as follows:

**1.** This civil action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII").

**2.** As set forth below, the United States alleges that Defendant, the City of Lansing, Michigan ("Defendant" or "Lansing"), discriminated against Sylvia Coleman ("Coleman") in violation of Title VII when it failed to provide her with a reasonable accommodation or to show undue hardship and terminated her employment because she could not work from Friday sundown through Saturday sundown due to her religious observance of the Sabbath as a Seventh-day Adventist.

## JURISDICTION AND VENUE

**3.** This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331, 1343(a), and 1345.

4. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to the cause of action occurred.

## PARTIES

5. Plaintiff United States is expressly authorized to bring this action by Section 706(f)(1) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1).

6. Defendant City of Lansing is a municipal corporation, organized to carry out governmental functions, incorporated under the laws of the State of Michigan, and located within this judicial district.

7. Defendant is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

## EEOC CHARGE

8. Sylvia Coleman filed a timely charge with the United States Equal Employment Opportunity Commission ("EEOC") (Charge No. 471-2018-03825) on or about July 5, 2018, alleging that Defendant discriminated against her in employment based on her religion (Seventh-day Adventist) when it failed to provide her with a religious accommodation and discharged her due to her sincerely held religious beliefs and practices.

9. Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC investigated Coleman's Charge, found reasonable cause to believe that Coleman was discriminated against based on her religion, attempted unsuccessfully to achieve resolution of this matter through conciliation, and subsequently referred the Charge to the Department of Justice.

10. All pre-conditions precedent for filing this lawsuit have been performed or have occurred.

## FACTS

*Coleman applies for and accepts the position of Detention Officer*

11. On or around August 29, 2017, Coleman submitted her application for the unionized Detention Officer position with the City of Lansing, Michigan Police Department.

12. The job posting and job description for the Detention Officer position stated:

**THIS POSITION REQUIRES SHIFT WORK AND APPLICANTS MUST BE ABLE TO WORK ANY DAY OF THE WEEK OR ANY HOUR OF THE DAY WITHOUT RESTRICTION.  THE COMMON WORK SCHEDULE IS A 12-HOUR SHIFT WITH OVERTIME ASSIGNMENTS ON A REGULAR BASIS.**

(Emphasis in original.)

13. Applicants for the Detention Officer position were required to complete a work availability section on the application.

14. On her employment application, Coleman did not check the box next to Saturday, thereby indicating that she was not available to work on Saturdays.

15. On or around December 18, 2017, Kesha McKitty, Human Resources Hiring Specialist, and Lieutenant Michelle Spoelma conducted a phone interview/screening with Coleman.

16. On the call, Coleman informed McKitty and Spoelma that she could not work from Friday sunset to Saturday sunset in observance of the Sabbath as a Seventh-day Adventist.

17. At the conclusion of the call, McKitty informed Coleman that she could move to the next phase of the hiring process.

18. On or around February 15, 2018, Coleman appeared for an in-person interview with McKitty, Lansing Police Captain Daryl Green, and Lieutenant Traci Ruiz.

19. Question 2 of the in-person interview was as follows:

3

>The Detention Officer position is a 24/7 operation requiring dedication, reliability and sacrifice for the Detention Unit team, currently running 12[-]hour shifts including (day) 7am to 7pm and (night) 7pm to 7am with mandatory overtime up to 16 hours and voluntary overtime up to 18 hours.  Additionally, in the first year of employment[,] schedules are rotated every six (6) weeks from day to night shift.  Tell us how you will be able to reasonably meet these requirements and describe any concerns you would have with this rotating schedule.
>
>*Candidate must be willing and available for all shifts, if there is a question of their availability, interview may be terminated.*

(Emphasis in original.)

20. In response to Question 2, Coleman explained that she had a flexible schedule, that she could work different schedules, and that she could help out when needed.

21. In stating that she was flexible, Coleman meant that she was flexible within the parameters of her religious observance of the Sabbath as she had previously indicated.

22. McKitty, who also interviewed Coleman by phone, was aware at the time of the panel interview that Coleman needed off from sunset Friday to sunset Saturday so that she could observe the Sabbath as a Seventh-day Adventist.

23. On or around June 4, 2018, McKitty called Coleman to offer her the Detention Officer position.

24. Coleman accepted the offer.

### *Coleman's Work Schedule*

25. On or around June 18, 2018, Coleman reported to her first day of work.

26. On her first day, Coleman received her work schedule from the Detention Officer Trainer Lorrie Ridenour.

27. Coleman noticed that she was scheduled to work on Saturday, June 23, 2018 from 7 a.m. to 7 p.m.

4

28. After reviewing her schedule, Coleman explained to Ridenour that she could not work on Saturdays because of her religious observance of the Sabbath.

29. Ridenour told Coleman to speak with Human Resources.

30. Later the same day, Coleman spoke with Mary Dedic, Payroll & Benefits Technician, regarding her schedule.

31. Coleman explained to Dedic that she could not work Saturdays because of her religious observance of the Sabbath as a Seventh-day Adventist.

32. Dedic directed Coleman to speak with her supervisor about her scheduling issues.

33. Later that day, Coleman spoke with Captain Eric Eichenberg regarding the fact that she could not work on the Sabbath.

34. Captain Eichenberg told Coleman that the schedule was set and that she was required to work her scheduled Saturday shift.

35. Coleman explained to Captain Eichenberg that she could not work the Saturday shift because she is a Seventh-day Adventist and observes the Sabbath from Friday sunset to Saturday sunset.

36. Coleman offered to come in Saturday night at or around 9:30 p.m. since sundown was at or around 9:15 p.m., and she offered to work overnight for up to 16 hours.

37. Captain Eichenberg responded that Coleman was required to work all of her scheduled shifts, even if they were on Saturdays.

*Termination*

38. On or around June 19, 2018, Coleman received a call from Captain Eichenberg asking her to meet him on June 20 at 8:00 a.m.

39. Coleman asked what the meeting was about.

40. Captain Eichenberg explained that they were going to meet to try and resolve her problem regarding her schedule.

41. On or around June 20, 2018, Coleman met with Captain Eichenberg, Linda Sanchez-Gazella, Director of Human Resources, and Elizabeth O'Leary, Employee and Labor Relations Specialist.

42. Sanchez-Gazella had a copy of Coleman's employment application and confirmed that it indicated that Coleman could not work on Saturdays.

43. Sanchez-Gazella then looked at certain interview panel members' notes taken during Coleman's interview.

44. Sanchez-Gazella stated that the interview notes indicated that Coleman informed the panel that she was "flexible" with her schedule.

45. Coleman reiterated that she could not work on Saturdays as indicated on her employment application.

46. Coleman also stated that she informed McKitty of the fact that she observed the Sabbath from sunset Friday to sunset Saturday during the phone interview as well.

47. Sanchez-Gazella nevertheless terminated Coleman's employment because she could not work on the Sabbath as a Seventh-day Adventist.

48. The termination letter, dated June 21, 2018 and signed by Sanchez-Gazella, states that: "[e]ffective June 20, 2018, the City of Lansing is terminating your employment due to you not being able to meet the job requirements of the Detention Officer position."

*Lansing failed to accommodate Coleman and has not established undue hardship*

49. Upon information and belief, the only Lansing management officials who discussed Coleman's need for an accommodation were Human Resources Director Sanchez-Gazella, Captain Eichenberg, and Chief of Police Mike Yankowski.

50. Upon information and belief, Sanchez-Gazella and Eichenberg generally reviewed the duties and requirements of the Detention Officer position but did not discuss anything else before deciding to terminate Coleman's employment.

51. Upon information and belief, Sanchez-Gazella briefly asked Yankowski about vacant positions in the Lansing police department.

52. Yankowski responded without inquiring further that there were no openings in the police department.

53. Sanchez-Gazella briefly reviewed the City-wide vacancy list and determined—without speaking to Coleman—that Coleman was not qualified for any of the job openings.

54. Upon information and belief, Lansing management did not meaningfully discuss potential accommodations prior to terminating Coleman's employment.

55. Lansing management did not discuss any potential accommodations with Coleman, including whether there were other open positions within Lansing for which she was qualified.

56. Lansing did not inform Coleman that she could or give her the opportunity to attempt shift swaps with other willing personnel.

57. Lansing did not attempt to schedule other personnel for the Friday sunset to Saturday sunset shifts and have Coleman cover the other shifts.

58. As a Detention Officer, Coleman was covered by the Agreement ("collective bargaining agreement") Between City of Lansing, Michigan and International Brotherhood of Teamsters, Chauffeurs & Warehousemen, Local 243 ("union").

59. The relevant provisions of the collective bargaining agreement between Lansing and the union do not prevent Lansing from attempting to make changes to Coleman's schedule to accommodate her nor does the collective bargaining agreement prevent voluntary shift swaps between Detention Officer employees.

60. The relevant provisions of the collective bargaining agreement require Lansing to consult with the union to resolve equal employment opportunity issues or questions of which it is aware.

61. The collective bargaining agreement also requires Lansing to work with the union to resolve employment issues that arise for Detention Officers not otherwise specifically governed by the terms of the agreement.

62. Lansing did not discuss with the union any possible means to accommodate Coleman's schedule request.

63. Prior to terminating Coleman's employment, Lansing management did not establish that accommodating Coleman would cause undue hardship on the conduct of its operations.

64. Coleman suffered emotional distress, pain and suffering, inconvenience, loss of enjoyment of life, humiliation, and other non-pecuniary damages as a result of Lansing's discriminatory actions.

65. Coleman suffered monetary loss as a result of Lansing's discriminatory actions.

## CLAIM FOR RELIEF

### COUNT 1

Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)
Lansing Discriminated Against Coleman on the Basis of her Religion

**66.** The United States repeats and incorporates by reference the factual allegations set forth in paragraphs 1 – 65.

**67.** Coleman informed the City that she held religious beliefs as a Seventh-day Adventist that prevented her from working sunset on Friday to sunset on Saturday, and, thus, she could not work her assigned Saturday shift.

**68.** Defendant discriminated against Coleman on the basis of her religion (Seventh-day Adventist) in violation of Section 703(a) of Title VII, 42. U.S.C. § 2000e-2(a) as follows:

(a) Lansing failed to engage with Coleman in an interactive process in efforts to reasonably accommodate her sincere religious observance, practice, and belief as a Seventh-day Adventist not to work on the Sabbath.

(b) Lansing failed to adequately attempt to reasonably accommodate Coleman's sincere religious observance, practice, and belief as a Seventh-day Adventist not to work on the Sabbath.

(c) Lansing failed to reasonably accommodate Coleman's sincere religious observance, practice, and belief as a Seventh-day Adventist not to work on the Sabbath.

(d) Lansing failed to show that reasonably accommodating Coleman's sincere religious observance, practice, and belief would cause undue hardship on the conduct of its detention center operations.

    (e)  Lansing terminated Coleman's employment because of her sincere religious observance, practice, and belief as a Seventh-day Adventist not to work on the Sabbath.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that this Court grant the following relief:

(a)  Grant a permanent injunction enjoining Defendant from engaging in religious discrimination, in violation of Title VII, against any employee or applicant for employment;

(b)  Order Defendant to institute policies, procedures, and programs to ensure a non-discriminatory workplace, including but not limited to implementing appropriate policies/procedures and providing adequate training to all employees and officials regarding religious accommodations and discrimination;

(c)  Award back pay with prejudgment interest, in amounts to be determined at trial, and all other equitable relief necessary to make Coleman whole for the monetary losses she suffered as a result of the discriminatory conduct alleged in this Complaint;

(d)  Award compensatory damages to Coleman to fully compensate her for her pain and suffering caused by Defendant's discriminatory conduct alleged in this Complaint, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and

(e)  Award such additional relief as justice may require, together with the United States' costs and disbursements in this matter.

## **JURY DEMAND**

The United States hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

        KRISTEN CLARKE
        Assistant Attorney General
        Civil Rights Division

BY:

        KAREN D. WOODARD (MD Bar)
        Chief
        Employment Litigation Section
        Civil Rights Division

        CLARE GELLER (NY Reg. No. 4087073)
        Deputy Chief
        Employment Litigation Section
        Civil Rights Division

        /s/ Sara Safriet
        SARA SAFRIET (DC Bar No. 1012810)
        Senior Trial Attorney
        U.S. Department of Justice
        Civil Rights Division
        Employment Litigation Section
        150 M Street, NE, 9th Floor
        Washington, D.C. 20530
        Sara.Safriet@usdoj.gov
        Telephone: (202) 532-5165
        Facsimile: (202) 514-1005

        /s/ Robert L. Galbreath
        ROBERT L. GALBREATH (DC Bar No. 460389)
        Senior Trial Attorney
        U.S. Department of Justice
        Civil Rights Division
        Employment Litigation Section
        150 M Street, NE, 9th Floor
        Washington, D.C. 20530
        Robert.Galbreath@usdoj.gov
        Telephone: (202) 532-5157

Facsimile: (202) 514-1005

*Counsel for Plaintiff United States of America*